UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TONY MCDONALD,<br><br> *Plaintiff*,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br> *Defendant*. | Case No. 4:25-cv-153<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

INTRODUCTION

 Many Americans like to keep their giving private. Some donors have complex motives and interests that they do not want to explain to others. Others seek anonymity out of modesty, or due to religious beliefs. And many donors fear repercussions if the causes they support become known. The First Amendment has long been recognized to permit anonymous association and donation for all these reasons, or for no reason whatsoever. An important part of championing anonymity is *not* requiring an explanation of why an individual seeks anonymity, because explaining one's reasons for being anonymous often destroys the benefit of anonymity and thus chills the anonymous speech one would make.

 Tony McDonald donates money to federal candidates. Because he is actively involved in partisan politics (indeed, he serves as general counsel for a county party), McDonald sometimes wants his personal support to be kept private. Thus, McDonald occasionally limits his donations to $200 or less, the threshold over which direct donations to candidates are publicly disclosed.

But even though McDonald is a sophisticated political insider, some arcane aspects of federal campaign finance laws were unknown even to him. To his surprise, a donation he made was disclosed to the FEC, and in turn the public, simply because the candidate received McDonald's donation through a conduit platform.

McDonald wants to make additional small donations to federal candidates through the platforms of the candidates' choosing, including ubiquitous conduit platforms. But he must hold back, fearing the disclosure of conduit contributions.

The conduit reporting requirement, 52 U.S.C. § 30116(a)(8), is unconstitutional as applied to donations of up to $200. So applied, this provision requires conduit committees to report the identity of each donor who donated via the conduit committee starting at a $0 threshold. This is an unconstitutionally low threshold under the First Amendment. It burdens donors' rights of association and expression of political speech without advancing any important government interest. In contrast, Congress already exempts from disclosure donations of up to $200 when given directly to a candidate. *Compare* 52 U.S.C. § 30116(a)(8) *with* 52 U.S.C. § 30104(b)(3)(A).

It defies comprehension why the identity of a donor who gives $3 to a candidate through digital platforms like WinRed or ActBlue must be publicly reported to the FEC, while a donor who physically hands a $175 check to a congressman at a fundraiser gets to keep his information private. The $3 digital donor is treated worse not because of the amount, or concerns of transparency, but merely because of the mechanism of the donation.

The courts are empowered to secure McDonald's rights to free political speech and association. Following certification of the important questions raised by this case to the en banc Fifth Circuit, this Court should enjoin Defendant from applying the conduit reporting

requirement to donations that do not exceed $200 and require Defendant to remove McDonald's past small-dollar donation made via a conduit from its public reports.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 2201, and 2202, as well as 52 U.S.C. § 30110, under which the question of the constitutionality of 52 U.S.C. § 30116(a)(8), must be certified to the United States Court of Appeals for the Fifth Circuit for consideration en banc.

2. Venue is proper in this Court under 52 U.S.C. § 30110 and 28 U.S.C. § 1391(e) because the Federal Election Commission is an entity of the United States and Plaintiff resides in this District.

## PARTIES

3. Plaintiff Tony McDonald is an individual, eligible to vote for the office of President, residing in Fort Worth, Texas.

4. Defendant Federal Election Commission ("FEC") is an independent federal agency established by 52 U.S.C. § 30106. The FEC is charged with administering and enforcing the Federal Election Campaign Act ("FECA"), including the provisions challenged in this action. The FEC has exclusive jurisdiction with respect to the civil enforcement of FECA.

## STATEMENT OF FACTS

*The Regulatory Regime*

5. Candidate committees must report to the FEC "the identification of each [] person (other than a political committee) who makes a contribution to the reporting committee during the reporting period, whose contribution or contributions have an aggregate amount or value in excess of $200 within the calendar year (or election cycle, in the case of an authorized committee

of a candidate for Federal office), or in any lesser amount if the reporting committee should so elect, together with the date and amount of any such contribution[.]" 52 U.S.C. § 30104(b)(3).

6. "Identification" is defined as: "(A) in the case of any individual, the name, the mailing address, and the occupation of such individual, as well as the name of his or her employer; and (B) in the case of any other person, the full name and address of such person." 52 U.S.C. § 30101(13).

7. However, conduit committees are subject to a different requirement, which lacks a minimum reporting threshold. "[A]ll contributions made by a person, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, shall be treated as contributions from such person to such candidate. The intermediary or conduit shall report the original source and the intended recipient of such contribution to the Commission and to the intended recipient." 52 U.S.C. § 30116(a)(8).

8. The Commission regulation implementing the disclosure requirement in 52 U.S.C. 30116(a)(8) for earmarked contributions provides that "[t]he intermediary or conduit of the earmarked contribution shall report the original source and the recipient candidate or authorized committee to the Commission . . ., and to the recipient candidate committee." 11 C.F.R. § 110.6(c)(1)(i).

9. And in cases where a political committee receives and forwards earmarked contributions, "[t]he report to the Commission . . . shall be included in the conduit's or intermediary's report for the reporting period in which the earmarked contribution was received . . . ." *Id*. § 110.6(c)(1)(ii). Itemized reporting of earmarked contributions must include, among other things, "the name and mailing address of each contributor and, for each earmarked

4

contribution in excess of $200, the contributor's occupation and the name of his or her employer . . . ." *Id.* § 110.6(c)(1)(iv)(A). Thus, under the FEC's existing reporting provision, all earmarked contributions must be individually itemized, including earmarked contributions of $200 or less.

10. Regarding timing, "[t]he report to the recipient candidate or authorized committee shall be made when the earmarked contribution is forwarded to the recipient candidate or authorized committee pursuant to 11 C.F.R. § 102.8." *Id.* § 110.6(c)(1)(iii). Candidate committees that receive earmarked contributions must "report each conduit or intermediary who forwards one or more earmarked contributions which in the aggregate exceed $200 in any election cycle." *Id.* § 110.6(c)(2)(i). In other words, while a conduit PAC's report is not subject to the individual contributor itemization threshold (i.e., more than $200 during an election cycle), a recipient committee's report is.

*WinRed and ActBlue*

11. WinRed is an internet fundraising platform for conservative political candidates.

12. WinRed exercises no discretion over the timing, recipient, or monetary amount of earmarked contributions it receives from donors.

13. The process works as follows: (1) A political committee contracts to establish a contribution page on the WinRed website, which is hosted and maintained by WinRed's vendor, WinRed Technical Services, LLC; (2) Pursuant to an end-user agreement, the political committee creates a fundraising page in accordance with the committee's specifications; (3) When creating a customized contribution page, the political committee has full discretion to determine how to use the website to solicit donors, including the ability to fully customize the content or the website, and the full authority as to how to share the URL for the site with donors, if at all; (4) Contributions made via the political committee's page on the WinRed site result in a nearly

instantaneous notification being sent to the recipient committee, as designated by the donors; and (5) Contributions made to the political committee are forwarded by WinRed to the recipient committees within 10 days (often instantaneously) in accordance with FEC rules and regulations.

14. Since January 1, 2023, WinRed has reported routing over $622 million in earmarked contributions. The two FEC reports it filed for 2023 combined to exceed 10 million pages. Its latest FEC quarterly report (1st Quarter 2024) exceeded 4.5 million pages.

15. Since January 1, 2023 to December 31, 2024, WinRed reported over 501,000 contributions valued at a penny ($0.01) each.[1] WinRed routed more than 520,000 additional contributions valued at a nickel ($0.05) or less (but exceeding a penny).[2]

16. Also, between January 1, 2023 and December 31, 2025, WinRed routed over $1.6 billion of contributions.[3] More than 6.06 million contributions were of $1 or less.[4] Over 55 million of WinRed's conduit contributions were of $200 or less.[5] Accordingly, each of those donors who did not make any additional contribution that, when combined with these donations, exceeded $200, would not have to be reported to the FEC by a political committee. However, because of the conduit reporting requirement, WinRed reported these 55+ million donations to the FEC.

17. ActBlue is WinRed's progressive counterpart, a hybrid PAC, and serves a similar role

---

[1] *Campaign Finance Data,* Federal Election Commission, https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00694323&two_year_transaction_period=2024&min_amount=0&max_amount=.01 (last accessed on Feb. 18, 2025).
[2] *Campaign Finance Data,* Federal Election Commission, https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00694323&two_year_transaction_period=2024&min_amount=.02&max_amount=.05 (last accessed on Feb. 18, 2025)
[3] *Financial Summary*, Federal Election Commission, https://www.fec.gov/data/committee/C00694323/ (last accessed on Feb. 18, 2025)
[4] *Campaign Finance Data,* Federal Election Commission, https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00694323&two_year_transaction_period=2024&min_amount=0&max_amount=1 (last accessed on Feb. 18, 2025)
[5] *Campaign Finance Data,* Federal Election Commission, https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00694323&two_year_transaction_period=2024&min_amount=0&max_amount=200 (last accessed on Feb. 18, 2025)

as a conduit committee for Democratic Party candidates. Between January 1, 2023 and December 31, 2024, ActBlue has reported over 115 million conduit contributions of $200 or less,[6] over 12 million of which were of $1 or less.[7] Had these donations been made directly to a political committee, and the donor did not make any additional contribution(s) that combined exceed $200, these donations would not have been required to be reported to the FEC.

18. But while ActBlue and WinRed must report the name and address information of small-dollar donors whose donations they forward to the intended recipients, that information is not subsequently required to be included on the reports of the recipients of those same earmarked contributions, which are required to simply report small-dollar donations in bulk. A donor contributing five dollars to a federal candidate committee via ActBlue or WinRed will be itemized on ActBlue or WinRed's report but will not be required to be reported by name on the recipient candidate committee's report.

*Tony McDonald*

19. Tony McDonald donated $50 to support a federal candidate on June 30, 2023. McDonald chose to limit the amounts to below $200, in part, so that his donation would remain anonymous.

20. However, unbeknownst to McDonald at the time of his donation, his chosen recipient routed donations through a conduit PAC—WinRed. As a result, McDonald's identity was publicly reported to the FEC as making a contribution to a superPAC.

21. Sometimes McDonald donates to candidates for reasons other than his support for

---

[6] *Campaign Finance Data,* Federal Election Commission, https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00401224&two_year_transaction_period=2024&min_amount=0&max_amount=200 (last accessed on Feb. 18, 2025)

[7] *Campaign Finance Data,* Federal Election Commission, https://www.fec.gov/data/receipts/?data_type=processed&committee_id=C00401224&two_year_transaction_period=2024&min_amount=0&max_amount=1 (last accessed on Feb. 18, 2025)

their candidacy. For example, McDonald has donated, and will donate in the future, simply to assist a candidate qualify for a debate, or to because the candidate offered donation incentives.[8] These types of donations do not indicate personal support for the candidate, yet disclosure of the donation would imply such support. McDonald does not want to explain or justify such contributions.

22.     Specifically, McDonald donated $1 to Marianne Williamson for President on June 27, 2019, to help her qualify for Democratic debates, even though he did not support her candidacy. This donation was processed through ActBlue. Unbeknownst to McDonald, it was reported as a donation to ActBlue, earmarked for Williamson.

23.     McDonald made a similar $1 donation to a republican presidential contender in the 2024 cycle. However, apparently because either that candidate did not use a conduit, or the conduit failed to report the donation, the 2024 donation was not reported.

24.     McDonald is concerned that if information about his donations remain on the FEC website, it will adversely impact McDonald's political activities, including his future giving.

25.     Due to his involvement in party politics, McDonald has various reasons for wanting to keep his small dollar donations private. Some of McDonald's donations will be made to candidates in contested primaries, including in Texas where he lives and works. McDonald is General Counsel for the Tarrant County Republican Party. He would not want his personal support for a candidate to imply that the Tarrant County Republican Party as an institution supports the candidate.

---

[8] *See, e.g.,* Doan, Laura, *Politics Doug Burgum is giving $20 gift cards in exchange for campaign donations. Experts split on whether that's legal*, CBS News, https://www.cbsnews.com/news/doug-burgum-president-campaign-gift-cards-20-donations-legal-experts/ (last accessed on Feb. 18, 2025); Flechas, Joey, *Suarez can get big campaign checks from the wealthy. Can he get $1 from regular folks?*, Miami Herald, https://www.miamiherald.com/news/politics-government/state-politics/article277674818.html (last accessed on Feb. 18, 2025)

26. If McDonald's small donations are revealed, he fears repercussions for himself and the Tarrant County Republican Party, in the form of demands for similar donations from other candidates, confusion over the Tarrant County Republican Party's stance in primary races, and misunderstandings regarding the intent and implications of McDonald's donations.

27. McDonald wants to make additional small dollar donations in the future but is afraid to do so because such donations might be disclosed simply based upon the manner in which candidates processes donations.

28. Thus, McDonald is chilled in his ability to express his political views through donations to his chosen political candidates. McDonald is forced to choose between freely voicing support for candidates and policy through monetary donations and maintaining his privacy.

*The FEC Asks Congress to Adopt an Itemization Threshold for Conduit Contributions*

29. On December 14, 2023, the FEC unanimously recommended legislative to Congress.[9]

30. The first priority listed under the section titled "Highest Priority Legislative Recommendations" concerned conduit contributions.

31. Specifically, the FEC recommended: "Congress should amend FECA's reporting requirement for conduit contributions to establish an itemization threshold consistent with other FECA reporting requirements."

32. The FEC contrasted Section 30104(b)(3)(A)'s $200 reporting threshold with the lack of any threshold for conduit contributions in Section 30116(a)(8). According to the FEC, the distinction in the two statutes had "a significant impact on the total number of reported transactions disclosed by all FEC filers." As an example, "[f]rom 2016 to 2020, the FEC saw the

---

[9] *Federal Election Commission Legislative Recommendations 2023*, Federal Election Commission, Dec. 14, 2023, https://www.fec.gov/resources/cms-content/documents/legrec2023.pdf (last accessed on Feb. 18, 2025).

9

number of reported transactions increase by more than 400 percent" and "attributes more than eighty percent of the increase to conduit and intermediary reports."

33. Thus, the FEC recommended that Congress amend 52 U.S.C. § 30116(a)(8) to strike the phrase "to the Commission" and add the following language:

> The intermediary or conduit shall report to the Commission the original source and the intended recipient of such contribution for each person who makes a contribution through the intermediary or conduit during the reporting period, whose contribution or contributions through the intermediary or conduit have an aggregate amount or value in excess of $200 within the calendar year, together with the date and amount of any such contribution.

34. Several FEC Commissioners wrote statements in support of the legislative recommendation to create an itemization threshold for conduit contributions.

35. Commissioner Dickerson wrote a letter in support on behalf of himself and Commissioner Trainor. They pointed out the significant burden that current law placed on donors and argued that the proposed amendment was constitutional based on Supreme Court precedent.[10] The Commissioners proposed a "temporary Directive" while awaiting amendment of the statute in the form of allowing the Commission to relieve donors of the disclosure requirement so long as a bipartisan majority found a demonstrated need.

36. Commissioner Lindenbaum also wrote a statement specifically "urging Congress to amend the Federal Election Campaign Act to eliminate the public disclosure of contributors' street names and street numbers."[11] Although Lindenbaum stated she did not support the proposed "temporary Directive" because of the administrative burdens it would cause, she

---

[10] *Statement of Commissioner Allen J. Dickerson on Proposed Directive Concerning Requests to Withhold, Redact, or Modify Contributors' Identifying Information*, available at: https://www.fec.gov/resources/cms-content/documents/Statement-on-Proposed-Directive-to-Withhold-Redact-or-Modify-Contributors-Information.pdf (last accessed on Feb. 18, 2025).

[11] *Statement of Commissioner Dara Lindenbaum Urging Congress to Amend the Federal Election Campaign Act to Eliminate the Public Disclosure of Contributors' Street Names and Street Number*, available at: https://www.fec.gov/resources/cms-content/documents/Statement-Urging-Amend-FECA-to-Eliminate-Disclosure-of-Contributors-Street-Nam.pdf (last accessed on Feb. 18, 2025).

nonetheless supported amendment to Section 30116(a)(8). Commissioner Lindenbaum proposed that personal donor information still be disclosed to the Commission, to serve transparency interests, but that the Commission not be required to release the information publicly, in order to serve concerns of individual personal safety.

37. The FEC repeated this recommendation as its number one legislative recommendation for the 119th U.S. Congress on December 12, 2024.[12]

38. Since the FEC released its recommendations, the 119th United States Congress began on January 3, 2025. As of the date of this filing, no bill has been introduced in either the House or the Senate that proposes the FEC's suggested amendment to 52 U.S.C. § 30116(a)(8).

39. The FEC continues to apply Section 30116(a)(8) as requiring the public disclosure of donor's personal identifying information.

## COUNT ONE
### RIGHT TO FREE SPEECH AND ASSOCIATION
### U.S. CONST. AMEND. I

40. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 of the Complaint as though fully set forth below.

41. Title 52 U.S.C. § 30116(a)(8) violates the First Amendment right to engage in political speech and association as applied to Plaintiff by mandating the reporting and disclosure of the identities and personal information of donors who donate up to $200 to a federal candidate's campaign through a conduit.

42. As applied to such donations, 52 U.S.C. § 30116(a)(8) does not survive any form of heightened First Amendment scrutiny. It does not further the governmental interest in preventing corruption or the appearance of corruption, nor is its disclosure requirement narrowly tailored,

---

[12] *Federal Election Commission Legislative Recommendations 2024*, available at: https://www.fec.gov/resources/cms-content/documents/legrec2024.pdf (last accessed on Feb. 18, 2025).

11

nor does it have a substantial relation to any sufficiently important governmental interest.

43. Accordingly, 52 U.S.C. § 30116(a)(8), as applied to contributions of $200 or less that are earmarked or otherwise directed through an intermediary or conduit to a candidate, violates Plaintiff's First Amendment rights to free speech and association. Plaintiff is thus entitled to declaratory and injunctive relief against Section 30116(a)(8)'s application to his conduit donations of $200 or less.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendant as follows:

a. A declaration that disclosure of contributor names and addresses pursuant to 52 U.S.C. § 30116(a)(8) of conduit donations not exceeding $200 violates the First Amendment;

b. Consistent with such declaration, permanent injunctive relief barring Defendant from requiring fundraising platforms subject to 52 U.S.C. § 30116(a)(8) to disclose Plaintiff's name and address when reporting conduit contributions not exceeding $200 to the FEC;

c. An Order that Defendant remove Plaintiff's past small-dollar conduit donations from its public reports;

d. Costs of suit;

e. Attorney fees and costs pursuant to 28 U.S.C. § 2412 or any other applicable authority; and,

f. Any other further relief as the Court may deem just and proper.

Dated: February 18, 2025         Respectfully submitted.

/s/ *Courtney Corbello*
Courtney Corbello (Texas Bar No. 24097533)

Trial Counsel
Charles Miller* (Ohio Bar No. 073844)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Suite 801
Washington, D.C. 20036
Tel: (202) 301-9800 / Fax: (202) 301-3399
ccorbello@ifs.org / cmiller@ifs.org
*pro hac vice admission pending

Warren V. Norred, P.E. (Texas Bar No. 24045094)
NORRED LAW, PLLC
515 East Border Street
Arlington, Texas 76010
817.704.3984
wnorred@norredlaw.com

*Counsel for Plaintiff*